THE plaintiff had obtained a rule of court on the defendant to show cause wherefore the judgment No. 773, November term, 1877, of this court, of the said William Daniel against him, the said William Nailor, for nine hundred and thirty-five dollars — real debt four hundred and sixty-seven dollars and fifty cents — with interest from the first day of January, 1877, should not be set aside on the ground of usury, and under which the following issues of fact were framed to be tried before a jury at the bar of the court, which were heard before Wootten and Houston, Judges, Comegys, C. J., absent.
First. Whether the promissory note of William Nailor, to the order of Hamilton Cummins, for four hundred and sixty-seven dollars and fifty cents, dated Smyrna, Del., February 1st, 1877, a copy of which is set forth in the plaintiff's affidavit, was an accommodation note.
Second. Whether William Daniel discounted said note for Hamilton 
Cummins by way of loan at a discount greater than six per cent.
Third. Whether the writing obligatory, to wit: the bond and warrant of attorney upon which a judgment No. 773, November term, 1877, in the Superior Court of New Castle County, for nine hundred and thirty-five dollars, real debt four hundred and sixty-seven dollars and fifty cents, with interest from January 1st, 1877, was given by the said Nailor in lieu of said note. (This issue was admitted by counsel on both sides.)
Fourth." Whether it was agreed between the said William Daniel and Isaac D. Hamilton that the maker of said note should have no notice or information that the said Daniel had discounted said note, or that at the maturity of said note the said Hamilton Cummins were to pay the full face of said note.
Issac D. Hamilton was called to the stand as a witness for the plaintiff in the rule, and was objected to by the counsel for the defendant as incompetent, because of his legal liability on the promissory note mentioned, but the counsel for the plaintiff produced the certificate of his discharge in bankruptcy, subsequent *Page 457 
to the date of it, and he was admitted and sworn as a witness. He testified that he was a member of the late firm of Hamilton 
Cummins, of Smyrna, now in bankruptcy; about February 1st we had some paper we wanted Dr. Daniel to discount; he was in our store at the time; he did not like the paper offered and suggested that we should get some of William Nailor's paper and he would discount that; a few days after I saw William Nailor and borrowed his note for four hundred and sixty-seven dollars and fifty cents; after we got Mr. Nailor's note I told Dr. Daniel we had it and asked him what he would charge me to discount it, and he told me he would do it for fifteen per cent. in excess of six per cent. interest; I told him that was too high a rate for such paper; we owed Dr. Daniel a balance on two notes at the time; a day or two afterward he wrote me that he wanted the balance on these two notes; I went to him, and after consultation I gave him Nailor's note on his terms — fifteen per cent. off and six per cent. interest after that — and he gave me in payment the two notes he held and the balance in money; I then asked him not to notify Nailor, the maker of the note, when it became due, but to look to our firm for payment, to which he agreed, saying he would look to us to see the note paid at maturity; there was nothing said about selling the note, but it was discounted in the way I have stated.
Cross-examined: I got three hundred and eighty-eight dollars for the note after the seventy-nine dollars and forty-seven cents discount and interest was deducted (the note was drawn for four months); out of this three hundred and eighty-eight dollars was deducted, the balance due on the two notes which he held, and the residue I received from Dr. Daniel in money; I cannot recollect how much money was coming to me; Mr. Nailor gave me the note on the day it was dated, February 1st, 1877; our firm failed about March 15th.
On the testimony of this witness the counsel for the plaintiff rested his case.
The counsel for the defendant then called George Harris as a witness, who was sworn and testified that about the beginning of the year 1877 Hamilton Cummins held a note of his for about eighty-five dollars, and afterward Dr. Daniel told him he *Page 458 
held a note of his given to Hamilton Cummins for one hundred and seventy-three dollars. He then spoke to Mr. Hamilton about it, and he told him that if it was so he had forgotten it, but he would see about it. He got the note after that from Mr. Hamilton.
Charles H. Dooling was next sworn and testified that he gave, Hamilton Cummins a note, and Dr. Daniel told him he had held a note of his for one hundred and sixty-five dollars. Afterward Mr. Hamilton told him he had it, and took it out of his pocket and showed it to him and asked him if that was his note. After he had taken it into his hands and looked at it, he told him that he never signed that note. Mr. Hamilton then said to him if it was not his note he would like for him to give it back to him, but which he declined to do, and kept it.
Before examining the two preceding witnesses, the counsel for the defendant had formally proved and put in evidence a letter from J. D. Hamilton to Dr. Daniel of the following tenor:
 SMYRNA, Feb. 6th, '77.
Doct.: I see a chance to make something, and if you will send me the two notes and one hundred and thirty dollars, why you please keep the note inclosed. Will you please sent it by Walter Johnson, as I want to use it right away, and oblige yours,
J. D. HAMILTON.
R. Harrington, for the plaintiff in the rule, in his remarks to the jury contended that upon the facts proved on every issue presented their verdict should be in favor of his client and that it was clearly the case of an innocent maker of a negotiable promissory note for the accommodation of the payees of it, who had at the time he made it and gave it to Hamilton Cummins no knowledge or intimation of the unlawful and usurious purpose for which it was to be used by them in procuring the negotiation or discounting of it by Dr. Daniel, the defendant in the rule. It had been proved that Mr. Nailor simply made and loaned the note in question to that firm, without any consideration or any legal liability on his part to them for it and merely as an accommodation note for their convenience and *Page 459 
benefit. They procured the discounting of it by the defendant at the usurious rate proved, and after their failure in business it was presented to him as the maker of it for payment, and he paid it by giving him the bond and warrant of attorney proved in the case for the amount of it, and upon which the judgment in question was afterward entered in this court. These facts had been distinctly proved by the testimony of Hamilton, whose veracity had not been impeached and could not be, and which clearly established the affirmative of each of the first three issues presented, although the third had been admitted by the counsel on the other side before any evidence had been produced. And as to the fourth and last issue, the affirmative of that had also been as clearly proved, that the defendant promised Hamilton when he discounted the note for him, that he would not notify Nailor of it when it became due, but would look to him and his firm for the payment of it. And it was after all this had occurred that the plaintiff in the rule learnt of the corruption and usury which vitiated and avoided the transaction in law on the part of the defendant; and it was then he determined to adopt the course which he is here pursuing in regard to it.
G. B. Rodney, for the defendant in the rule: Although the character of Hamilton for veracity had not been directly impeached as a witness in the case, enough had been disclosed in the evidence for the defendant, he thought, to admonish the jury of the danger of deciding every disputed allegation of fact in the case in favor of the plaintiff on the testimony of one such witness only, with the strong bias which he evidently had in favor of that party in the trial of it. But if the jury would turn to his brief letter of February 6th, 1877, to Dr. Daniel, in evidence before them, in which he says: "Doctor, I see a chance to make something, and if you will send me the two notes and one hundred and thirty dollars, why, you please keep the note inclosed. Will you please sent it by Walter Johnson, as I want to use it right away, and oblige yours, J. D. Hamilton," and interpret those "two notes" to mean and refer to the two equivocal notes mentioned in the testimony of the witnesses for the defendant, George Harris and Charles H. Dooling, and which *Page 460 
for obvious reasons were of importance to him far beyond their face value, the first of which was for one hundred and seventy-three dollars and the second for one hundred and sixty-five dollars, and add to them the one hundred and thirty dollars asked for in money in the letter, they would find the aggregate amount would be four hundred and sixty-eight dollars, and only differing from the sum for which Nailor's note was given to Hamilton Cummins and which was discounted for them by Dr. Daniel to the small amount of fifty cents, the latter being for four hundred and sixty-seven dollars and fifty cents. It was evident from the testimony of those witnesses that both of the notes had been tampered with and their genuineness was denied by each of the makers of them, and if the note inclosed in and sent with the letter by Hamilton to Dr. Daniel was the note of Nailor to Hamilton Cummins for four hundred and sixty-seven dollars and fifty cents, and the doctor in compliance with the request contained in the letter retained that note and sent Hamilton those two notes and one hundred and thirty dollars in money, or the full equivalent of four hundred and seventy-eight dollars in exchange for it, where do you find any usury in the transaction or in the alleged discounting of that note by Dr. Daniel?
Harrington, in reply, alleged that there was a credit indorsed on one of the notes at that time and challenged the counsel on the other side to produce the notes to disprove the statement if it was not true.
The Court,
That if they were satisfied from the only evidence which they had before them in regard to the matter, that the promissory note in question and referred to in the written issues joined in the case, was made by William Nailor to the order of Hamilton Cummins without consideration, and merely to enable them to raise money on it for their sole use and benefit by getting it discounted by another party, and that it was delivered by him to them or either of them and was afterward discounted for them by William Daniel in the manner and on the terms stated in the testimony of the witness, *Page 461 
Isaac D. Hamilton, that is to say, for fifteen per cent. in excess of six per cent. interest on the amount for which the note was given, then it constituted in contemplation of law the negotiation or discounting by him of an accommodation note for their benefit made by Nailor, with knowledge on his part that it was such, if the jury were satisfied that the testimony of Hamilton in regard to the matter was true, at a greater or higher rate of discount than six per centum per annum, and was contrary to the statute prescribing the rate of interest for the loan or use of money, which is six per cent., and was void in law for usury; and consequently, if they were satisfied from all the evidence before them in regard to the matter that such were the facts in the case, their verdict should be for the plaintiff in the rule. Otherwise their verdict should be for the defendant in the rule, because it was incumbent upon the plaintiff in the rule to prove to the satisfaction of the jury the affirmative of the issues joined in this case so far as they were disputed or denied.
 Verdict for the plaintiff in the rule on all the issues.